(Nos. 5567 and 5649.    November 24, 1931.)

ANNIE I. HARRIS, Respondent, v. SEWELL H. CHAPMAN et al., Respondents, and UNION CENTRAL LIFE INSURANCE COMPANY, a Corporation, Appellant.

[5 Pac. (2d) 733.]

McElroy & Chalfant and Wm. A. Brodhead, for Appellant.

A. F. James, L. M. Bresnahan and J. J. McFadden, for Respondents.

BUDGE, J.—This action was brought to quiet title to the use of certain waters. The following brief history of the water rights and lands involved, as disclosed by the record, will furnish a foundation for the disposal of the questions presented:

July 10, 1884, R. F. Buller, and Rosa B. Buller, his wife, appropriated and diverted through a ditch constructed by them, known and hereinafter referred to as the Whitton ditch, 780 miner's inches of the waters of Big Wood River. By decree dated December 13, 1909, in the case of *S. C. Frost et al. v. Alturas Water Company et al.*, that amount of water from Big Wood River, with date of priority July 10, 1884, was decreed, together with other waters not involved here, to R. F. Buller and Rosa B. Buller, the lands to which said water was appurtenant not being specified. That decree is hereinafter referred to as the "Frost Decree" and the water right as the "Buller water right." For a number of years prior to the Frost decree said Buller water right had been used for the irrigation of a ranch owned by Buller and wife, afterward acquired by appellant, known as the Whitton Ranch, now consisting of approximately 109 acres, and upon other lands owned by them. May 7, 1909, prior to the Frost decree, Buller and wife conveyed the Whitton Ranch to one, Robert H. Wright, together with all of the water from the Whitton ditch that should be decreed to the said land for irrigation and domestic use and also a proportionate interest in said ditch. Certain other water rights were transferred by Buller and wife to various persons whose rights were decreed by the lower court upon stipulation and are not involved here. After such transfers and on July 12, 1909, Buller and wife conveyed to Annie I. Miller (afterward Annie I. Harris, hereinafter referred to as "respondent") all of their right, title and interest in and to the Whitton ditch and water rights conveyed therein. At that time respondent owned a ranch comprising some 630 acres known as the Harris Ranch, which on March 22, 1913, respondent conveyed with the appurtenant water right to her son, Douglas C. Miller. On August 8, 1913, Douglas C. Miller purchased the Whitton Ranch and the appurtenant water right, thus acquiring and merging the water rights of the two ranches and thus carrying out the purpose, as testified to by him, of controlling the water rights in the Whitton ditch.

Subsequently the following transfers of the Whitton Ranch were made:

October 11, 1918, Douglas C. Miller and respondent executed and delivered to appellant a real estate mortgage covering the Whitton Ranch and a water right specifically described therein as follows:

"Together with a full primary water right of One Hundred fifty (150) inches of water from the Big Wood River, dating from the year 1884 and appurtenant to said land, and all irrigation ditches used in connection therewith."

August 9, 1919, Douglas C. Miller conveyed said Whitton Ranch to respondent by quitclaim deed containing the following recitals:

"Together with any and all water rights, ditches and canals belonging to the said land."

March 29, 1922, respondent conveyed the Whitton Ranch to J. W. Meller by quitclaim deed including a water right described as follows:

"Together with all water, water rights appurtenant to said land. Together with all improvements, privileges and appurtenance thereunto belonging, together with reservoir rights, ditch and water rights of every nature, with all rights of way for conveyance of water to land, used on, or attaching to, or belonging to said land."

December 9, 1927, J. W. Meller, in consideration of one dollar and the cancelation and release of the mortgage above referred to, conveyed the Whitton Ranch to appellant by quitclaim deed, the description of the water right therein being almost identical with that contained in the mortgage above referred to.

May 5, 1928, thirteen days before this action was commenced, J. W. Meller executed and delivered to appellant a second quitclaim deed covering the Whitton Ranch, in order, as recited therein, "to correct errors in that certain deed between the same parties, dated December 9, 1927." The correction sought to be made was to eliminate the specific description of water right in the previous deed, and to substitute in lieu thereof description of water right prac-

tically identical with that contained in the deed from respondent to J. W. Meller.

Each of the deeds above referred to contained the usual, standard form of appurtenance clause the same or similar in effect to the following:

"Together with all and singular, the tenements, hereditaments and appurtenances thereto belonging or in anywise appertaining."

Diverting attention to the Harris Ranch, it appears that subsequently to August 8, 1913, Douglas C. Miller transferred the same to respondent, and together they mortgaged the same to Northwest & Pacific Hypotheekbank (hereinafter referred to as "Hypotheekbank") which acquired title to said Harris Ranch November 9, 1922, by sheriff's deed after foreclosure sale. November 5, 1922, Hypotheekbank executed contract of sale of the Harris Ranch in favor of J. W. Meller, who assigned said contract on or about November 17, 1923, to respondent.

It appears from the record that respondent or her son was in possession of the Whitton Ranch from August 8, 1913, until March 29, 1922, when it was conveyed to J. W. Meller, and was in possession of the Harris Ranch from prior to 1909 until the present time.

Respondent, as equitable owner of the Harris Ranch, by virtue of the contract of sale above referred to, brought this action against appellant to quiet title to waters claimed to be appurtenant to the Harris Ranch, consisting of 150 miner's inches of the waters of certain springs and 400 miner's inches of the Buller water right. Respondent alleged that appellant, as owner of the Whitton Ranch, claimed an adverse interest in such water right and that such claim was without right, but admitted that appellant was entitled to 150 miner's inches of said Buller water right for the irrigation of the Whitton Ranch other than the amount of said water right claimed by her. Appellant filed an answer and cross-complaint in which it denied that respondent was entitled to part of the water right claimed by her for the Harris Ranch and alleged that it was en-

titled to the right to the use of 430 miner's inches of said Buller water right for the irrigation of the Whitton Ranch. In its cross-complaint appellant prayed that certain other parties claiming rights in said Buller water right be made parties and their rights adjudicated. These additional parties were brought in and served but with the exception of Hypotheekbank we need not consider them further than to say that those who did not default filed answers and cross-complaints setting forth their claims and their rights were decreed by stipulation and are not involved in the questions before us. Hypotheekbank answered denying that appellant was entitled to more than 150 miner's inches of said Buller water right, and in its cross-complaint, as owner of the legal title, in effect repeated the allegations of respondent's complaint with additional allegations of ownership of said water right by adverse user for over fourteen years. The denials of the answer of appellant to said cross-complaint are similar to those of its answer to the complaint with the addition of denials of the allegations of adverse user.

Upon these issues the cause was tried without a jury and thereafter the court made and filed its written findings of fact and conclusions of law and entered decree based thereon, fixing and determining the water rights of the various parties and decreeing to appellant 150 miner's inches of the waters of Big Wood River with date of priority July 10, 1884, for use upon said Whitton Ranch, the decree providing as to all parties that the water so decreed should be diverted from the Whitton ditch. Costs were awarded in favor of respondent and all cross-complainants and against appellant.

From said decree and from an order subsequently made overruling appellant's motion to strike cost bills, this appeal is taken.

The questions presented for consideration by appellant's assignments of error and briefs will be considered in the order set forth therein.

The record discloses that a certain flood water right with date of priority 1891 was appurtenant to the Harris Ranch in addition to the water right here involved; that said 1891 water was delivered to the Harris Ranch through what is known as Canal No. 45 belonging to Big Wood River Irrigation District, within which irrigation district the Harris Ranch is situated; that the point of diversion of Canal No. 45 on Big Wood River is located about a mile and a half below the present point of diversion of the Whitton ditch; that about 1918 the original point of diversion of the Whitton ditch and one and a half miles of said ditch therefrom were abandoned and water for such ditch was thereafter diverted and conveyed for approximately 1½ miles through an abandoned ditch known as the Cove ditch, thence into the Whitton ditch, the point of diversion of the Cove ditch being located a short distance above the point of diversion of the original Whitton ditch. The evidence shows and the court found, that during a period of from 1919 continuously until 1928 each irrigation season, as soon as the 1891 flood water right, delivered through Canal No. 45, was exhausted, usually in July of each year, 400 inches of the Buller water right delivered through the Whitton ditch to the Harris Ranch were transferred from the Whitton ditch and delivered by the water-master through Canal No. 45 and conveyed to and used upon the Harris Ranch during the remainder of each irrigation season. Apparently the first and only objection to such transfer and delivery of water was made by appellant in 1928 and in that year said 400 miner's inches of water were transferred and delivered through Canal No. 45 for only a few days, the water being thereafter delivered through the Whitton ditch as soon as said protest was made. Appellant introduced evidence in support of its cross-complaint tending to show injury due to increased seepage losses as a result of such transfer. The evidence also tends to show that no application was made to the Department of Reclamation for authority to change the point of diversion and that no order authorizing such transfer was made by said department.

It should be noted that in the complaint and cross-complaints the only relief sought is to quiet title to the water rights of the parties. Neither the action nor the cross-action was brought for summary adjudication of water rights under the provisions of C. S., sec. 7036, nor to enjoin the use or transfer of water by respondent, nor for damages as a result of any transfer of water, nor is this a proceeding under C. S., secs. 5563 or 5582, seeking to change point of diversion or place of use. Therefore the question of the right to transfer such water or as to damage or injury that might have been sustained by appellant was not an issue in this case and therefore the court was not required to make findings upon this question, as appellant complains. A trial court is not required to make findings upon issues unnecessary to a determination of the case. (*Koon v. Empey*, 40 Ida. 6, 231 Pac. 1097.) However, the court made findings relating to the transfer of the 400 inches of the Buller water from the Whitton ditch to Canal No. 45 each irrigating season and that no application was made to or order made by the Department of Reclamation authorizing such finding, but while not an issue in the case, the finding has support in the evidence. Furthermore, the decree provides that all water decreed thereunder shall thereafter be diverted through the Whitton ditch.

Appellant also complains that the trial court refused to make findings of fact responsive to certain allegations of the complaint and answer. A comparison of the findings with the particular allegations referred to discloses that the same were fully covered by the findings.

Appellant seeks to make the point by its second assignment of error that Finding No. 3 is contrary to law and not sustained by the evidence and contends that the evidence shows that water of certain springs flowing not to exceed 150 miner's inches, rising in the vicinity of the abandoned portion of the Whitton ditch, is a feeder of Big Wood River and therefore public waters of the state. In the finding complained of the court found that respondent

and Hypotheekbank and their predecessors in interest for many years prior to the institution of this suit appropriated and used upon the Harris Ranch all of the waters of the springs, not exceeding 150 miner's inches. The evidence clearly shows that this water was not diverted and was not used upon the Whitton Ranch and there is sufficient competent evidence to sustain the court's finding that these springs were public waters and subject to appropriation and were appropriated and beneficially and continuously used by respondent and her predecessors in interest. There is no merit in appellant's contention that the court was without jurisdiction to decree the waters of said springs for the reason that the same were located upon what is known as the Blaine County Poor Farm, to which respondent and Hypotheekbank had no title. No claim is made to said water by the owner of the land upon which the springs are located and he is not here complaining and for that reason appellant is not in a position to question the right of respondent to the waters of these springs. Furthermore, the waters of springs are subject to appropriation and use with the consent of the owner of the land on which the same are situated. (*Short v. Praisewater*, 35 Ida. 691, 208 Pac. 844.) There is no evidence in the record to show that the waters of these springs were not appropriated prior to the time the land on which the same were situated was patented or that such waters were appropriated without the consent of the owner of the land; and the presumption arising from long-continued use without objection of the owner is that such water was validly appropriated and used.

This action being to ascertain, determine and decree the extent and priority of a right to the use of water and partaking of the nature of an action to quiet title to real estate (*Taylor v. Hulett*, 15 Ida. 265, 97 Pac. 37, 19 L. R. A., N. S., 535; *Mays v. District Court*, 34 Ida. 200, 205, 200 Pac. 115), appellant must rely upon the strength of its own title to establish its right and not upon the weakness of that of its adversary. (*Washington State Sugar*

*Co. v. Goodrich,* 27 Ida. 26, 147 Pac. 1073; *Wing v. Wallace,* 42 Ida. 430, 435, 246 Pac. 8; *Steinour v. Oakley State Bank,* 45 Ida. 472, 479, 262 Pac. 1052.) The finding complained of is therefore not contrary to law and is supported by the evidence.

Appellant, in its third assignment of error, attacks the court's Finding No. 10 upon the ground that said finding is not sustained by the testimony. The material part of the finding is that prior to the execution of the mortgage dated October 11, 1918, all of the water right actually appurtenant to the Whitton Ranch, save and except 150 miner's inches, had been transferred to and used upon the Harris Ranch and ever since said date and for more than ten years prior to the institution of this suit, 150 miner's inches of the Buller water right and no more, were used upon and appurtenant to said Whitton Ranch.

If we understand appellant's contention correctly it seeks to enlarge the water right appurtenant to the Whitton Ranch as fixed and specified in its mortgage by relying on certain deeds passing between respondent and Douglas C. Miller covering the ranches in question. There is abundant evidence to support the court's finding complained of. The testimony shows that no more than 150 miner's inches of the Buller water right were appurtenant to the Whitton Ranch, even conceding that more than 150 miner's inches were used upon the Whitton Ranch when the Harris and Whitton Ranches were owned jointly by respondent and her son, Douglas C. Miller. The mortgage particularly specified that but 150 miner's inches of the Buller water right were to be covered by the lien of said mortgage and the balance of the Buller water right was reserved for use upon the Harris Ranch. As said in *Harvey v. Deseret Sheep Co.,* 40 Ida. 450, 453, 234 Pac. 146, 147:

"It is certainly neither unlawful nor unusual for the owner of a parcel of land, with an appurtenant water right, to convey a part of the land together with a portion of the appurtenant water right."

Such rule as to conveyances is equally applicable to mortgages and the mortgagors here had the right to include in

or omit from the lien of the mortgage all or any part of the water right appurtenant to the land mortgaged. Appellant's water right for the Whitton Ranch is fixed by the mortgage and limited to the recitals therein and no greater right than that specified was acquired by appellant even though it appeared that in the cultivation of the Whitton Ranch by respondent and her son water in excess of 150 miner's inches had been used on the Whitton Ranch when not required for use upon the Harris Ranch. Appellant knew from the terms of its mortgage that the water right covered by the lien of said mortgage was limited to 150 miner's inches. It also knew when it received the first deed from J. W. Meller that the water right appurtenant to the Whitton Ranch was so limited, it being so recited therein. Appellant was also informed by said J. W. Meller that the water right appurtenant to the Whitton Ranch was limited to 150 miner's inches. The fact that it took a second deed from J. W. Meller and which it designates as a correction deed and in which it is recited "together with all water and water rights appurtenant to said land" did not convey a water right in excess of the amount specified in its mortgage or in excess of the water that had actually become appurtenant to the Whitton Ranch, and it is abundantly established that no more than 150 miner's inches were appurtenant to or used upon the Whitton Ranch.

The general appurtenance clause in each of the deeds did not enlarge the specific water right described therein. In *Paddock v. Clark*, 22 Ida. 499, 126 Pac. 1053, the grantor had three different classes of water rights appurtenant to the land. The deed described only two of the classes but contained the usual appurtenance clause. The court limited the water which passed with the land to that particularly described in the deed and held that the general appurtenance clause was not, under these circumstances, sufficient to convey the other water right which, admittedly, was an appurtenance to the land but which had not been specifically mentioned in the deed. (See, also, *Arnett v. Linhart*, 21 Colo. 188, 40 Pac. 355.)

In Finding No. 2 the court found that for more than twelve years prior to the institution of the present suit respondent and Hypotheekbank purchased and acquired for use upon the Harris Ranch 400 miner's inches of the Buller water right and that said 400 miner's inches were appurtenant to the Harris Ranch by virtue of continuous beneficial use thereon. Appellant, in its fourth assignment of error, contends that the testimony fails to support this finding. With this contention we are not in accord. The court's finding is abundantly sustained by the evidence. The testimony discloses that for a long period of years the respective water-masters and deputies delivered to the Whitton ditch 550 inches of the Buller water right for the Harris and Whitton Ranches when sufficient water was available to supply these rights, 150 inches of which were diverted to the Whitton Ranch as appurtenant thereto and 400 inches to the Harris Ranch each year from 1919 to 1928 until about the middle of July, after which time the 400 inches appurtenant to the Harris Ranch were delivered through Canal No. 45. This division was made, as above indicated, prior to the giving of the mortgage by respondent to the Hypotheekbank, and thereafter the 400 miner's inches were appurtenant to and used on the Harris Ranch save and except when the ranches were owned by respondent and her son, during which time the water was divided and used between the two ranches as they saw fit, which division and use could not result in abandonment. A change of place of use of a decreed water right to lands other than those upon which such water right was formerly used does not constitute abandonment. (*Joyce v. Murphy Land etc. Co.*, 35 Ida. 549, 208 Pac. 241.) However, respondent and her successors, since prior to 1909 used the 400 miner's inches on the Harris Ranch when the same were available and necessary to its proper cultivation. This we think sufficient to establish the fact beyond controversy that it was the intention of respondent and her successors in interest to make said 400 miner's inches appurtenant to the Harris Ranch and no complaint was made touching the distribu-

tion of this water or the change of the place of use from 1919 until 1928, a period of nine years. As heretofore pointed out, appellant must rely upon the strength of its own title and not upon the weakness of that of its adversary. In this connection it may be observed that appellant alleged that 430 miner's inches of the Buller water right were appurtenant to the Whitton Ranch but introduced no evidence in support of such allegation and established no greater right than 150 miner's inches as appurtenant to the Whitton Ranch, while the testimony in behalf of respondent establishes that both by purchase and use 400 inches of the Buller water right became appurtenant to the Harris Ranch and in addition thereto the right to the use of not exceeding 150 miner's inches of the waters of the springs heretofore referred to.

We are not unmindful of the fact that appellant seeks to make a point that the change of point of diversion from Whitton Ditch to Canal No. 45 about the month of July of each year was made without authority from the Commissioner of Reclamation and therefore no rights inured thereunder to the benefit of respondent and Hypotheekbank. However, a change in the point of diversion made without the approval of the Department of Reclamation does not forfeit the water right. (*Joyce v. Rubin,* 23 Ida. 296, 306, 130 Pac. 793.)

Appellant also contends that the lower court failed to decree 30 inches of the Buller water right, claiming that it was entitled to such 30 inches. However, the court decreed to appellant the full amount established as appurtenant to the Whitton Ranch or covered by appellant's mortgage, namely, 150 miner's inches, and if the court failed to decree said 30 miner's inches there is no evidence justifying an award of such alleged undecreed water to appellant.

Appellant complains of the court's Finding No. 11 which in effect finds that for more than five years prior to the institution of this action respondent and Hypotheekbank have been in the open, notorious, exclusive, visible and adverse possession of the 400 miner's inches of water here-

tofore referred to and have used the same upon the Harris Ranch continuously and adversely against appellant and all the world, and in its fifth assignment of error contends that such finding is contrary to the evidence. The evidence shows that Hypotheekbank has been the owner of the Harris Ranch and appurtenant water right since 1922, which is more than five years prior to the institution of this suit, and has openly, exclusively and notoriously used this water, which use had been continuous and adverse to appellant. This finding is fully supported by the evidence.

The sixth assignment of error attacks the action of the trial court in overruling appellant's motion to strike the cost bills of respondent and cross-complainants. From the record it appears that on November 22, 1929, A. F. James, one of the attorneys for said respondent and cross-complainants received from the trial judge by mail, at his office in Gooding, the findings of fact, conclusions of law and decree signed by said trial judge; that on November 22, 1929, he forwarded the same by mail to the clerk of the district court at Hailey, together with cost bills of respondent and cross-complainants, for filing and that the same were filed on November 23, 1929; and that on the same day he deposited in the mails copies of said cost bills addressed to attorneys for appellant at Boise. Appellant contends that the cost bills were served before the decision was filed and upon motion should have been stricken. C. S., sec. 7218, provides:

"The party in whose favor the judgment is rendered and who claims his costs, must, within five days after . . . . notice of the decision of the court . . . . file with the clerk, and serve upon the adverse party or his attorney, a copy of a memorandum of the items of his costs and necessary disbursements in the action or proceeding . . . . "

This provision is mandatory in its terms and unless a cost bill is filed within the required time such bill will be stricken from the files. (*Stickney v. Berry*, 7 Ida. 303, 62 Pac. 924.) The findings and conclusions are ordinarily "the decision of the court" to which C. S., sec. 7218, *supra*,

refers. (*Young v. Washington Water Power Co.*, 39 Ida. 539, 548, 228 Pac. 323; *Smith v. Faris-Kesl Const. Co., Ltd.*, 27 Ida. 407, 150 Pac. 25.) There is no requirement that the notice of such decision must be in writing and when counsel for respondent and cross-complainants received the formal findings of fact and conclusions of law from and signed by the trial judge, he received actual notice of the decision of the court and thereupon the time within which he was required by C. S., sec. 7218, to file and serve his memorandum of costs commenced to run. Such time does not begin to run from the filing of the decision but from the notice of the decision. The cost bills were filed within time and the court did not err in denying the motion to strike the same.

The two remaining assignments of error are not argued and no authorities are cited in support thereof and therefore will not be considered or determined by this court. (*Merchants Trust Co. v. Davis*, 49 Ida. 494, 504, 290 Pac. 383, and cases therein cited.)

The judgment is affirmed. Costs awarded to respondents.

Lee, C. J., and Givens, Varian and McNaughton, JJ., concur.

Petition for rehearing denied.